# UNITED STATES DISTRICT COURT
## DISTRICT OF MINNESOTA

CATHERINE ROGERS,                              CIVIL NO. 06-385 (JRT/AJB)

          PLAINTIFF,

V.                                             REPORT AND RECOMMENDATION ON THE
                                               PARTIES' CROSS MOTIONS
                                               FOR SUMMARY JUDGMENT

JO ANNE B. BARNHART, COMMISSIONER OF
SOCIAL SECURITY,

          DEFENDANT.

---

Ethel Schaen, Esq., for Plaintiff

Lonnie F. Bryan, Assistant United States Attorney, for Defendant

---

## I.     INTRODUCTION

Plaintiff Catherine Rogers ("Plaintiff") disputes the unfavorable decision of the Commissioner of the Social Security Agency ("Commissioner") denying her claim for a period of disability and disability insurance benefits under Title II of the Social Security Act.  This matter is before the court, United States Magistrate Judge Arthur J. Boylan, for a report and recommendation to the District Court on the parties' cross motions for summary judgment.  *See* 28 U.S.C. § 636 (b)(1) and Local Rule 72.1. Based on the reasoning set forth below, this Court **recommends** that Plaintiff's Motion for Summary Judgment [Docket No. 8] **be granted** and that the Commissioner's Motion for Summary Judgment [Docket No. 12] **be denied**.

1

## II.     ISSUES BEFORE THE COURT

The primary issues before the Court are: (1) whether Administrative Law Judge ("ALJ") Diane Townsend-Anderson erred in discounting the opinions of Plaintiff's treating physicians; (2) whether the ALJ erred in her assessment of Plaintiff's credibility; and (3) whether the ALJ's decision is supported by substantial evidence in the record, including the additional evidence submitted after she rendered her decision.

## III.    PROCEDURAL HISTORY

Plaintiff filed an application for Disability Insurance Benefits ("DIB") on December 12, 2002, alleging disability as of June 25, 2002. (T. 58-60). The state agency denied Plaintiff's claim initially and on reconsideration. (T. 32-36, 40-42). Plaintiff made a timely request for a hearing. (T. 380).

On February 24, 2005, the ALJ conducted an administrative hearing regarding Plaintiff's application for DIB. On June 28, 2005, the ALJ denied Plaintiff's application for benefits. (T. 12-24). Plaintiff filed a request for review to the Appeals Council. On December 6, 2005, the Appeals Council denied review, making the ALJ's decision the final decision of the Commissioner. (T. 7-9). Based on the Commissioner's final decision denying DIB, Plaintiff filed an action in this Court to reopen the matter. Both parties filed motions for summary judgment.

## IV.    FACTUAL BACKGROUND AND MEDICAL HISTORY

Plaintiff was 53 years old when she had her hearing before the ALJ. (T. 16). Plaintiff has a high school education and a degree in practical nursing from a vocational-technical school. (T. 16, 384). Plaintiff was previously employed as a licensed practical nurse (LPN).

*Right Knee*

Plaintiff has a history of problems with her right knee. (T. 163, 234-35). On September 8, 2000, Dr. Michael J. Nemanich noted that Plaintiff walked with a limp on her right leg and squatting caused her severe pain in her right knee. (T. 163). An MRI of the knee showed degenerative arthritis. (T. 162, 164). Plaintiff had numerous complaints of pain in her right knee and received cortisone injections and underwent synvisc treatments.[1] (T. 162, 209, 258).

In March 2002, Dr. Jack Gay referred Plaintiff to Dr. Todd Holmes for an initial rehabilitation evaluation. (T. 234). Plaintiff reported constant pain. (*Id.*). Dr. Holmes noted that Plaintiff "has had some trouble in her hands and especially her knees. She has had surgery two times on her knees." (T. 235). Dr. Holmes recommended that Plaintiff undergo a rehabilitation program that included a home exercise program and/or exercise at a health club. Dr. Holmes noted his concern that Plaintiff's underlying osteoporosis may limit the program. (T. 236).

Plaintiff reported pain in her knee in September and October 2002. (T. 178). Dr. Richard Sheely treated Plaintiff's right knee with a third synvisc injection. (*Id.*). Plaintiff also received cortisone injections in both knees. (*Id.*). Dr. Sheely noted that Plaintiff was still suffering from depression. (*Id.*).

Plaintiff continued to receive cortisone injections in her right knee. (T. 170, 173, 174). Dr. Sheely also continued to treat Plaintiff's right knee with synvisc injections in 2003 (T. 169-70, 324-25). Plaintiff reported constant pain in 2004 and received injections in her knees. (T. 308-11, 313,

---

[1]"Synvisc is indicated for the treatment of pain in osteoarthritis (OA) of the knee in patients who have failed to respond adequately to conservative nonpharmacologic therapy and simple analgesics, e.g., acetaminophen." *Physicians' Desk Reference* (2005).

315-16).  A July 2004 MRI of Plaintiff's knee revealed mild to moderate effusion, synovitis, and possibly a small active tear within the residual body segment.  (T. 346).  Plaintiff saw Dr. Owen R. O'Neill for follow-up of her knee.  (T. 350).  Dr. O'Neill administered a steroid injection to Plaintiff's knee.  (*Id.*).  An X-ray of Plaintiff's knee showed advancing degenerative arthritis.  (T. 351).  Dr. O'Neill believed that knee replacement was inevitable.  (T. 311, 351).

Dr. O'Neill noted that Plaintiff "has failed conservative management for her right knee osteoarthritis."  (T. 351).  Dr. O'Neill opined that it was reasonable for Plaintiff to consider a total knee replacement.  Plaintiff reported that the pain in her right knee was "a significant detriment to her lifestyle" and ultimately decided to undergo a total knee replacement.  (T. 307-08, 351).

On October 25, 2004, Dr. O'Neill performed surgery on Plaintiff's right knee.  (T. 349).  Following surgery, Plaintiff stated her knee was swollen and sore.  (T. 386).  She also explained that the pain in her knee limited her walking and standing.  (*Id*.).

*Right Hand*

In November 2000, Plaintiff saw Dr. Sheely for pain in her thumb.  (T. 208.).  An X-ray revealed degenerative arthritis at the interphalangeal joint of the right thumb.  (T. 257).  In February 2001, Plaintiff reported pain in her thumb and discomfort in her interphalangeal (IP) joints of her other fingers.  (T. 205).  In November 2001, Plaintiff informed Dr. Sheely that she had "a lot of pain in her hands."  (T. 195).  Dr. Sheely referred Plaintiff to Dr. Laura D. Koch for evaluation of the pain in her hands.  (T. 161).  Dr. Koch reviewed the X-ray of Plaintiff's thumb.  (*Id.*).  Dr. Koch noted swelling in Plaintiff's proximal interphalangeal (PIP) joint of her long finger, narrowing of the IP joint, and a deviation posture of her thumb.  (*Id*.).  Dr. Koch administered a pain relief injection to Plaintiff's finger.

(*Id.*).  Plaintiff underwent numerous injections to help alleviate the pain in her hand.   (T. 160).   On June

11, 2002, Dr. Koch noted that Plaintiff was not responding well to conservative care.   (*Id.*)  Dr. Koch

opined that Plaintiff had obvious synovitis[2] in the joints.   (*Id.*).

On June 25, 2002, Dr. Koch performed surgery (synovectomy) on Plaintiff's right thumb, index

finger, and long finger.   (T. 138).   Plaintiff underwent physical therapy on her hand following surgery.

(T. 143-59).

On October 4, 2002, Plaintiff reported that her hand was "quite painful."   (T. 178).   Plaintiff

told Dr. Sheely that she was unable to perform her job duties because she could not use her hand.

(*Id.*).   Dr. Koch noted that Plaintiff quit her job because of the persistent pain in her hand.   (T. 159).

Plaintiff's pain also forced her to give up most of her leisure activities.   (*Id.*).

On November 8, 2002, Dr. Koch reported in a letter:

> Catherine Rogers has been under my care for rather significant degenerative arthritis of her right
> hand. Ultimately, she has required synovectomies of the IP joint of the thumb, index and long
> finger PIP joints.  Despite these surgeries, she has continued to have problems in using her
> hand. She has pain with grasp function. She is no longer able to perform her work duties
> because of her limitations. At this point, given her age, I do not think further surgery is indicated
> and I think use restrictions are most appropriate. I don't think she can function in her previous
> job capacity.  (T. 157).

Dr. Koch saw Plaintiff three days later for persistent pain at the index distal interphalangeal

(DIP) joint.   (T. 156).   Dr. Koch noted that Plaintiff responded well to the cortisone injections of her

PIP joints and recommended further treatment with cortisone injections.   (*Id.*).

In December 2002, Dr. Sheely noted that Plaintiff had problems in the distal joint of her right

---

[2]Synovitis is the inflammation of the synovial membrane usually with pain and swelling of the
joint.  W.B. Saunders & Co., *Dorland's Illustrated Medical Dictionary*, 1773 (29th ed. 2000).

hand. (T. 175). In January 2003, Dr. Sheely administered injections to Plaintiff's right hand (the distal joint on her thumb, index finger, middle finger, and the proximal joint on the long finger and index finger). In May 2003, Dr. Sheely administered injections to Plaintiff's right hand (long finger, proximal interphalangeal joint, and distal joint of the thumb). (T. 174).

Plaintiff saw Dr. Sheely on August 11, 2003 for multiple joint injections. Dr. Sheely noted that Plaintiff "has five joints on her [right] hand which have become quite sore and painful and have responded well to cortisone injections in the past . . . ." (T. 170). Dr. Sheely administered the injections to the five joints. (*Id.*).

In March 2004, Dr. Sheely administered injections to Plaintiff's hand. (T. 315-16). In May 2004, Plaintiff saw Dr. Sheely and complained of depression and joint pain. Dr. Sheely injected the DIP and PIP joints on the middle and index fingers of Plaintiff's right hand. (T. 313).

### *Medical Assessment Form*

On January 20, 2005, Dr. Sheely completed a form entitled "Medical Assessment of Ability to Do Work-Related Activities (Physical)." (T. 299-301.) Dr. Sheely opined that Plaintiff was incapable of lifting any weight. (T. 299). Dr. Sheely also indicated that Plaintiff could stand/walk for only 30 minutes in an eight hour day and for only ten minutes without interruption. (*Id.*).

Dr. Sheely opined that Plaintiff should never climb, crouch, kneel, or crawl. (*Id.*). Dr. Sheely also opined that Plaintiff's reaching, handling, feeling, and pushing/pulling were affected by her impairment. (*Id.*). Dr. Sheely noted that Plaintiff had pain in her hands and knees due to arthritis. (*Id.*). Dr. Sheely also noted that Plaintiff's concentration and memory were affected by chronic pain. (T. 301).

6

*Evidence Submitted to Appeals Council after ALJ Issued her Decision*

The ALJ issued her decision on June 28, 2005.  (T. 24).  However, Plaintiff submitted additional evidence to the Appeals Council on July 28, 2005.  (T. 364-70).  The additional evidence included (1) a treatment note from Dr. Koch, dated May 2, 2005; (2) a treatment note from Dr. Owen R. O'Neill, dated June 20, 2005; and (3) a letter dated July 14, 2005 from Dr. Koch.  (T. 364).  The additional evidence discussed the pain in Plaintiff's right hand and knee and indicated that she was unable to perform the jobs identified by the vocational expert.  The Appeals Council admitted this additional information into evidence, but did not discuss it in its decision to deny Plaintiff's request for review.

## V.    TESTIMONY AT ADMINISTRATIVE HEARING

The administrative hearing took place before the ALJ on February 24, 2005.  (T. 380). Plaintiff testified that she is unable to work a full-time job because she has "physical pain, severe swelling, depression, [and] fatigue."  (T. 384).  Plaintiff stated that her pain is primarily in her right hand, but she also has pain in her right knee, neck, shoulders, lower back, and hips.  (*Id.*).   Plaintiff was unable to make a fist with her right hand at the hearing.  (T. 385).

Plaintiff also testified that she had knee replacement surgery.  (*Id.*).  She indicated that her knee was still swollen and sore.  (T. 386.)  Plaintiff stated that she does physical therapy either at home or at a fitness club.  Plaintiff testified that suffers from moderate depression on a daily basis because of the pain and her restricted lifestyle.  (*Id.*).

7

Plaintiff testified about her daily activities. (T. 387). Plaintiff stated that she sometimes forces herself to take a walk for one or two blocks despite her severe pain. (*Id.*). She indicated that she occasionally does designing and scrap-booking, but takes many breaks because she can't use the scissors or punches. (*Id.*). Plaintiff stated that she cleans the house once a week, but it usually takes her all day and she has to lay down to rest after taking her pain medication. (*Id.*). Plaintiff testified that she goes grocery shopping, but her husband helps her. (*Id.*).

Plaintiff used to bowl. (T. 388). Plaintiff's social life is limited to spending time with her family. (*Id.*) Plaintiff testified that she can only button her clothing with her left hand because of the pain in her right hand. (T. 388-89). She also requires assistance in opening jars or cutting various foods. (T. 389). Plaintiff's ability to write with her right hand is very limited. (*Id.*). Plaintiff stated that it is very difficult for her to get out of bed in the morning because of her pain, stiffness, and depression. (*Id.*).

The vocational expert, Steve Bosch, testified at the administrative hearing. (*Id.*) The ALJ posed a hypothetical question to the vocational expert ("VE") with regards to an individual of Plaintiff's age, education, and work experience and (1) who is on a number of medications with no apparent side affects; (2) who is impaired with osteoarthritis of the right hand and knee; (3) who suffers from fibromyalgia and affective mood disorder secondary to pain; (4) who is limited to lifting 20 pounds occasionally and 10 pounds frequently; (5) who is limited to work that requires no repetitive rotation of the neck, no power gripping, twisting or bounding with the dominant hand, over shoulder work or right foot pedal manipulations, (6) who is limited to work where there is no requirement for heights, ladders, or scaffolding or exposure to temperatures or humidity extremes; and (7) who is limited to semi-skilled work.

The VE testified that Plaintiff would not be able to perform her past relevant work.  (T. 391).

The VE also stated that Plaintiff's skills as an LPN would not readily transfer to other work.  (*Id.*).

However, the VE testified that based on the ALJ's hypothetical, Plaintiff could work as a security guard

(8,000 jobs available), cashier (20,000 jobs available), or office helper (5,000 jobs available).  (*Id.*).

The ALJ posed a second hypothetical and added the restrictions of occasionally lifting and

carrying items that weighed 10 pounds and frequently lifting and carrying items that weighed  five

pounds.  (T. 392).  The VE testified that the security guard position and cashier position would still be

available, but at reduced numbers.  (*Id.*).

The ALJ posed a third hypothetical and added the following restrictions:  (1) unable to lift or

carry any weight; (2) stand for a maximum of 30 minutes out of an eight hour day and never more than

10 minutes at any one time; (3) unable to climb, crouch, kneel, or crawl, and only occasionally balance

and stoop; and (4) unable to reach, handle, feel, push or pull.  (T. 392-93).  The VE testified that there

would not be any work in the regional or national economy that Plaintiff could perform.  (T. 393).

Counsel for Plaintiff posed a hypothetical question to the VE based on the restrictions imposed by Dr.

Sheely in the medical assessment report dated January 20, 2005.  (T. 397.)  The VE testified that

"sustained competitive employment would not be possible.  (*Id.*).

## VI.    THE ALJ'S FINDINGS AND DECISION

On June 28, 2005, the ALJ issued her decision denying Plaintiff's application for DIB.   The

ALJ followed the sequential five-step procedure as set out in the rules.  *See* 20 C.F.R. §§

404.1520(a)(4) and 416.920(a).  The Eighth Circuit has summarized these steps as follows:

The Commissioner must determine: (1) whether the claimant is presently engaged in "substantial gainful activity;" (2) whether the claimant has a severe impairment--one that significantly limits the claimant's physical or mental ability to perform basic work activities; (3) whether the claimant has an impairment that meets or equals a presumptively disabling impairment listed in the regulations (if so, the claimant is disabled without regard to age, education, and work experience); (4) whether the claimant has the residual functional capacity [RFC][3] to perform his or her past relevant work; and (5) if the claimant cannot perform the past work, the burden shifts to the Commissioner to prove that there are other jobs in the national economy that the claimant can perform.

*Fines v. Apfel*, 149 F.3d 893, 894-95 (8th Cir. 1998).

Based on the above, the ALJ determined that Plaintiff met the requirements for the first two steps of the disability determination procedure. (T. 17). The ALJ found that Plaintiff has not engaged in substantial gainful activity since her alleged onset date of June 25, 2002. (*Id.*). Regarding the second step, the ALJ found that Plaintiff's alleged pain symptoms are considered "severe" based on the requirements in regulations. (T. 17-18). Regarding step three, the ALJ found that Plaintiff's "severe impairments are not manifested with the degree of severity required to meet or medically equal, either singly or in combination, one of the impairments listed in Appendix 1, Subpart P, Regulations No. 4." (T. 18).

The ALJ then proceeded to evaluate Plaintiff's RFC. The ALJ determined that Plaintiff has the following RFC: (1) lift and carry up to 20 pounds occasionally and up 10 pounds frequently; (2) stand and/or walk for 6 hours and sit for 6 hours in an 8 hour day; (3) perform work that requires no repetitive rotation of the neck, no power gripping, twisting, or pounding with the dominant right hand,

_____

[3]A claimant's RFC is the most the claimant can still do despite the claimant's physical and/or mental limitations. 20 C.F.R. § 404.1545.

over shoulder work or right pedal foot manipulations; (4) no exposure to extreme temperatures or

humidity; and (5) limited to semi-skilled work due to an affective mood disorder.  (T. 19).

Based on the RFC, and considering the Plaintiff's age, education and relevant work experience,

the ALJ determined that Plaintiff could not perform her past relevant work, but that she could perform

the jobs of a security guard, cashier, and office helper.  (T. 23).  Accordingly, the ALJ found that

Plaintiff was not disabled under the regulations imposed by the Social Security Act.  (T. 24).

## VII.   DISCUSSION

### Standard of Review

This Court will affirm the ALJ's findings that the claimant was not under a disability if the

findings are supported by substantial evidence based on a review of the entire record.  *Haley v .*

*Massanari*, 258 F.3d 742, 747 (8th Cir. 2001).  "Substantial evidence is less than a preponderance,

but enough that a reasonable mind might accept it as adequate to support a decision."  *Id.* at 747

(quoting *Beckley v. Apfel*, 152 F.3d 1056, 1059 (8th Cir. 1998)).  The review the Court undertakes,

however, must go beyond solely the examination of the record for evidence in support of the

Commissioner's decision.  *Id.*  The Court must additionally examine the record for evidence that

detracts from that decision.  *Id.*  Nevertheless, as long as there is substantial evidence to support the

decision, this Court will not reverse it simply because substantial evidence exists in the record that

would support a contrary outcome or because this Court might have decided differently.  *Id.*

"In cases involving the submission of supplemental evidence subsequent to the ALJ's decision,

the record includes that evidence submitted after the hearing and considered by the Appeals Council."

*Bergmann v. Apfel*, 207 F.3d 1065, 1068 (8th Cir. 2000).  Thus, the Court must determine whether

11

the ALJ's decision "is supported by substantial evidence on the record as a whole, including the new

evidence submitted after the determination was made."  *Id.* at 1068 (quoting *Riley v. Shalala*, 18 F.3d

619, 622 (8th Cir. 1994)).  In other words, the Court must determine if the ALJ's decision would had

changed if the new evidence was in the record at the initial hearing.  *Id.* at 1068.

### **Analysis of Decision**

#### The ALJ Erred in Discounting the Opinions of Plaintiff's Treating Physicians

Generally, "a treating physician's opinion is due controlling weight if that opinion is well-

supported by medically acceptable clinical and laboratory diagnostic techniques and is not inconsistent

with the other substantial evidence in the record."  *Hogan v. Apfel*, 239 F.3d 958, 961 (8th Cir. 2001)

(quotations omitted); 20 C.F.R. § 404.1527(d)(2).  However, a statement from a medical source that a

claimant is "disabled" or "unable to work" does not necessarily mean that the Commissioner will find

the claimant disabled.  20 C.F.R. § 404.1527(e)(1); *Brown v. Barnhart*, 390 F.3d 535, 540 (8th Cir.

2004).  Moreover, it is appropriate for the ALJ to disregard a treating physician's opinion when it

"consists of nothing more than vague, conclusory statements."  *Strongson v. Barnhart*, 361 F.3d

1066, 1070 (8th Cir. 2004).

Here, the ALJ ignored Dr. Koch's opinion.  Dr. Sheely referred Plaintiff to Dr. Koch for

evaluation of the pain in her hands.  (T. 160-61).  Dr. Koch indicated that Plaintiff had "a rather

inflammatory form of arthritis and [has] not respond[ed] well to conservative care.  (T. 160).  Dr. Koch

opined that Plaintiff had synovitis in the joints.  (*Id.*).

On June 25, 2002, Dr. Koch performed surgery on Plaintiff's right thumb, index finger, and

long finger.  (T. 138).  Plaintiff underwent extensive physical therapy following her surgery.  (T. 143-

12

59).  However, on October 4, 2002, Plaintiff reported that her hand was "quite painful."  (T. 178).  Dr.

Koch noted that Plaintiff quit her job and gave up most of her leisure activities because of the pain in

her hand.  (T. 159).

On November 8, 2002, Dr. Koch reported in a letter that Plaintiff was under her care for

"rather significant degenerative arthritis of her right hand" and ultimately required surgery on the "IP

joint of the thumb, index and long finger PIP joints."  (T. 157).  However, Dr. Koch opined that

"[d]espite these surgeries, [Plaintiff] continued to have problems in using her hand.  She has pain with

grasp function.  She is no longer able to perform her work duties because of her limitations."  (*Id.*).  Dr.

Koch concluded that use restrictions were appropriate and did not believe Plaintiff could function in her

previous job capacity.  (*Id.*).

The ALJ failed to consider Dr. Koch's opinion.  Dr. Koch's opinion is consistent with Dr.

Sheely's opinion.  (T. 174-75; 299-301).  Dr. Koch's assessment was also generally consistent with

the medical evidence in the record.  For example, an X-ray of Plaintiff's right thumb revealed

degenerative arthritis.  (T. 257).  Furthermore, Dr. Koch's opinion is also supported by the numerous

cortisone injections administered by Dr. Sheely prior to Plaintiff's surgery and following her surgery.

Despite these injections, Plaintiff still reported constant pain.  (T. 317).  The ALJ failed to even

acknowledge Dr. Koch's assessment or opinion.  The ALJ should have given Dr. Koch's opinion

controlling weight because her opinion was well-supported by the medical evidence in the record and

was not inconsistent with the other substantial evidence in the record.

The ALJ also erred in discounting Dr. Sheely's opinion.  The ALJ concluded that Dr. Sheely's

restrictions were inconsistent with the medical record, the conservative treatment regime, and Plaintiff's

testimony.  (T. 21).  Instead, the ALJ relied on the opinion of Dr. Thomas Chisholm, a non-treating

physician.  (*Id*.).  Dr. Chisholm opined that Plaintiff could lift 20 pounds occasionally and 10 pounds

frequently.  (*Id.*).  He also opined that Plaintiff could stand and/or walk for 6 hours and sit for 6 hours in

an 8 hour workday.  (*Id*.).  However, Dr. Chisholm simply reviewed Plaintiff's medical records and

never examined or treated Plaintiff.  Generally, the opinion of a non-examining physician does not

constitute substantial evidence.  *Kelley v. Callahan*, 133 F.3d 583, 589 (8th Cir. 1998).

Notably, Dr. Sheely opined that Plaintiff was incapable of lifting any weight.  (T. 299).  Dr.

Sheely also opined that Plaintiff could stand and/or walk for only 30 minutes in an eight hour day and

for only ten minutes without interruption.[4]  (*Id.*).  Dr. Sheely indicated that Plaintiff's reaching, handling,

feeling, and pushing/pulling were affected by her impairment.  (*Id.*).  Dr. Sheely noted that Plaintiff had

pain in her hands and knees.  (*Id.*).  Dr. Sheely also indicated that Plaintiff's concentration and memory

were affected by chronic pain.  (T. 301).

The ALJ declined to give Dr. Sheely's opinion significant weight because she felt the restrictions

were inconsistent with Plaintiff's testimony regarding her daily activities.  The ALJ noted that Plaintiff

walked everyday, went to the fitness club three days a week, and cleaned the house.

However,  Plaintiff's testimony regarding her regular activities cannot be separated from her

other testimony that she engaged in many of these activities only with the help from others or on a

---

[4]Dr. Sheely did not fill out the section in the form that asked for the medical findings that
support such an assessment.  Consequently, Defendant argues that Dr. Sheely's opinion should not be
given any weight.  However, Dr. Sheely treated Plaintiff for an extensive period of time and
administered injections to Plaintiff's knee and hand.  Plaintiff's need for surgery also supports Dr.
Sheely's assessment.

restricted basis.  For example, Plaintiff testified that she *sometimes* forces herself to take a walk *despite her severe pain.*  (T. 387) (emphasis added).  Plaintiff also stated that she cleans the house on Tuesdays, but she has to take many breaks.  (*Id.*).  She explained that housecleaning usually takes her all day because of her pain.  (*Id.*).  Plaintiff testified that she goes grocery shopping, but with her husband's assistance.  (*Id.*).

The ALJ also noted that Plaintiff underwent conservative treatment, but the record does not support this assertion.  Dr. Koch stated that "Plaintiff is not responding well to conservative care."  (T. 160).  Subsequent to that statement, Dr. Koch performed surgery on Plaintiff's hand.  (T. 138).  Dr. O'Neill also indicated that Plaintiff did not respond to conservative treatment.  (T. 349).  Plaintiff had numerous cortisone and synvisc injections to her knee.  Dr. O'Neill eventually performed surgery on Plaintiff's knee.  Thus, the ALJ erred in discounting Dr. Sheely's opinion.

Plaintiff's Credibility

In determining the credibility of a claimant's subjective complaints, the ALJ looks to several factors as set out in *Polaski v. Heckler*, 739 F.2d 1320, 1322 (8th Cir. 1984).  These factors include: (1) daily activities; (2) duration, frequency and intensity of pain; (3) dosage and effectiveness of medication; (4) precipitating and aggravating factors; and (5) functional restrictions.  *Id.* at 1322.  These factors must be considered in the light of "the claimant's prior work record, and observations by third parties and treating and examining physicians . . . ."  *Id.*  "[A]n ALJ may not discount a claimant's allegations of disabling pain solely because the objective medical evidence does not fully support them."  *Goff v. Barnhart*, 421 F.3d 785, 792 (8th Cir. 2005) (citations omitted).   An ALJ may, however,

discount a claimant's subjective complaints if the complaints are inconsistent with the record as a whole. *Id.* at 792.

An ALJ who determines that a claimant's subjective complaints lack credibility must "make an express credibility determination explaining his reasons for discrediting the complaints." *Novotny v. Chater*, 72 F.3d 669, 671 (8th Cir. 1995) (quoting *Ghant v. Bowen*, 930 F.2d 633, 637 (8th Cir. 1991)).

The Court will examine the factors set forth in *Polaski* and the ALJ's treatment of them, to determine whether the ALJ reached an appropriate conclusion regarding Plaintiff's credibility.

### (1) Daily Activities

The ALJ indicated that Plaintiff walked everyday, went to the fitness club three days a week, cleaned the house (including vacuuming and scrubbing), and participated in hobbies such as designing and scrap-booking.  The ALJ concluded that Plaintiff's daily activities show that she is "able to live an active lifestyle and suggests that her impairments are not as severe as she reports."  (T. 20).

However,  the evidence in the record contradicts the ALJ's description of Plaintiff's daily activities.  The record shows that Plaintiff's daily activities were limited and sometimes required the assistance of family members.  (T. 153-55, 387, 389).  The ALJ's finding that Plaintiff is "able to live an active lifestyle" is also inconsistent with the record that shows Plaintiff gave up most of her leisure activities.  (T. 159).  Furthermore, the Eighth Circuit "has repeatedly observed that the ability to do activities such as light housework and visiting with friends provides little or no support for the finding that a claimant can perform full-time competitive work." *Burress v. Apfel*, 141 F.3d 875, 881 (8th

Cir. 1998) (citations omitted).  The Court finds that Plaintiff's limited daily activities are not inconsistent with the substantial evidence in the record.

### (2) Duration, Frequency, and Intensity of Pain

The record shows that Plaintiff has a history of problems with her right knee.  (T. 163, 234-35.) Plaintiff consistently reported pain in her right knee and received cortisone injections and underwent synvisc treatments.  (T. 162, 209, 258).  Ultimately, Plaintiff underwent a total knee replacement.  (T. 307-08, 351).  Plaintiff also had pain in her right hand.  Plaintiff received numerous injections to her hand, but she continued to have pain.  Dr. Koch performed surgery on Plaintiff's right thumb, index finger, and long finger.  (T. 138).  Plaintiff underwent physical therapy on her hand following surgery. (T. 143-59).  Plaintiff also continued to receive injections to her hand after her surgery.

The ALJ acknowledged that Plaintiff had arthritis of her hands and underwent surgery. However, the ALJ asserted that Plaintiff's subjective complaints with respect to the severity of her impairment are not fully credible because she "was cross-stitching and bowling" a year after her hand surgery.  (T. 19).  The ALJ also stated that the pain in Plaintiff's right knee "was completely resolved, though she still had some post-operation pain."  (*Id.*).  However, the ALJ cannot highlight individual inconsistences and ignore the rest of the record.  For example, Plaintiff testified that she and her husband "used to be on a bowling team, but [she] had to give that up . . . ."  (T. 388).  Moreover, Plaintiff testified at the hearing that her knee was still sore which limited her standing and walking.  (T. 386).

The medical evidence confirms that Plaintiff's pain is ongoing.  The record in this case shows that Plaintiff has persistently sought medical care, including cortisone and synvisc injections, and other

pain medications before and after her alleged onset date of disability.[5]   The Court also finds that

Plaintiff's allegations of pain in her hand and knee are consistent with her complaints to her doctors.

Thus, this factor weighs in Plaintiff's favor.

### (3) Dosage, Effectiveness, and Side Effects of Medication

Plaintiff has taken various medications to control her pain, depression, and sleep disturbances.

(T. 326).  Plaintiff takes Vicodin[6] for pain and Celexa[7] for her depression.  Plaintiff testified that she has

not experienced any side-effects.  (T. 388).  However, Plaintiff indicated that she was addicted to

Vicodin and preferred that her doctor prescribe a pain medication that did not have an addictive side

effect.  (*Id.*).  Plaintiff also underwent extensive physical therapy sessions which did not seem to

improve her condition.  (T. 143-59).  Doctors administered numerous cortisone and synvisc injections

to Plaintiff's hands and knees, but Plaintiff still had pain and ultimately required surgery.  The Court

finds that this factor favors Plaintiff.

### (4) Precipitating and Aggravating Factors

The record shows that Plaintiff's pain started well before her alleged onset date of disability.

(T. 163, 208, 234-35).  Dr. Koch diagnosed Plaintiff with osteoarthritis and degenerative joint disease

in her right hand.  Plaintiff ultimately had surgery on her right hand. Dr. Sheely and Dr. O'Neill

---

[5]Plaintiff also saw two chiropractors for her severe pain.  (T. 329-34, 366).

[6]  Vicodin is a narcotic pain reliever. *The PDR Family Guide to Prescription Drugs*, Three Rivers Press (8th ed. 2000).

[7]"Celexa is used to treat major depression - a stubbornly low mood that persists nearly every day for at least 2 weeks and interferes with everyday living." *Id.*

diagnosed Plaintiff with osteoarthritis in her right knee.  Dr. O'Neill performed surgery on Plaintiff's

right knee.[8]

Plaintiff reported symptoms of depression to her doctor and she was prescribed medication.

She also reported symptoms of disturbed sleep, decreased energy level, and decreased attention and

concentration.   Dr. Sheely noted that Plaintiff's concentration and memory were affected by chronic

pain.  (T. 301).

Plaintiff testified that she can only stand for about ten minutes without swelling in her knee.  (T.

387).  The ALJ asserted that Plaintiff never reported these symptoms to a treating physician after her

knee replacement surgery.  (T. 19).  Dr. O'Neill noted that Plaintiff had excellent motion in her right

knee following her surgery.  (T. 348).  However, Dr. O'Neill also prescribed Vicodin for Plaintiff's

knee pain.  (*Id.*).  Dr. Sheely opined that Plaintiff could stand and/or walk for only 30 minutes in an

eight hour day and for only ten minutes without interruption.  (T. 299).  The Court is not persuaded that

such inconsistencies are of such a substantial nature that they would support the ALJ's credibility

determination.  The Court finds that this factor weighs in Plaintiff's favor.

### (5) Functional Restrictions

Plaintiff stated that her pain is primarily in her right hand, but she also has pain in her right knee,

neck, shoulders, lower back, and hips.  (T 384).  The record shows that Plaintiff was unable to make a

fist with her right hand at the hearing.  (T. 385).

_____

[8]Plaintiff was also diagnosed with osteopenia in the lumber spine and femoral neck and
fibromyalgia.  (T. 16).

Plaintiff has pain in her knee which has limited her walking and standing. (T. 386). Plaintiff testified that she suffers from moderate depression on a daily basis because of the pain and her restricted lifestyle. (*Id.*).

Plaintiff's daily activities are limited and some activities require the assistance of her family members. Plaintiff's leisure activities are also limited. Plaintiff has difficulty getting out of bed in the morning because of her stiffness, pain, and depression.

The evidence shows that Plaintiff has persistently sought medical care to help alleviate her chronic pain. Plaintiff's need for surgery on her hand and knee further supports her complaints of pain and her restricted lifestyle.

Finally, the ALJ stated that Plaintiff's lack of effort to find other work given her limitations reduces her overall credibility. The Court disagrees. The *Polaksi* factors are to be considered in the light of "the claimant's prior work record." *Polaski*, 739 F.2d at 1322. The record shows that Plaintiff was previously employed as a licensed practical nurse and eventually stopped working because of the persistent pain in her hand. (T. 159).

The ALJ incorrectly discounted Plaintiff's subjective complaints because her complaints were not inconsistent with the record as a whole.

<u>Sedentary versus Light Work</u>

Plaintiff also argues that the ALJ erred in not finding her disabled based on Medical-Vocational Rule 201.14. This rule directs a finding of "disabled" for a claimant with the following profile: (1) closely approaching advanced age (50-54); (2) has a high school education or more; (3) previous work experience was skilled or semi-skilled; and (4) those skills are not transferable. 20 C.F.R. Pt. 404,

Subpt. P, App. 2, Table No. 1, Rule 201.14. This profile is limited to performing "sedentary work." *Id*.

The evidence in the record establishes that Plaintiff was closely approaching advanced age, had a high school education, and her skills from her previous employment were not transferable to other work. Nonetheless, the ALJ concluded that Plaintiff was able to perform light work and therefore was not disabled. *See* 20 C.F.R. Pt. 404, Subpt. P, App. 2, Table No. 1, Rule 202.14. "Light work involves lifting no more than 20 pounds at a time with frequent lifting or carrying of objects weighing up to 10 pounds." 20 C.F.R. § 404.1567(b). However, a job in this category "requires a good deal of walking or standing . . . ." *Id.*

Notably, Dr. Sheely opined that Plaintiff was unable to carry any weight. Dr. Sheely also opined that Plaintiff could only stand and/or walk for less than 30 minutes in a day and stand and/or walk for less than 10 minutes without interruption.

By contrast, "[s]edentary work involves lifting no more than ten pounds at a time and occasionally lifting and carrying articles like docket files, ledgers, and small tools. 20 C.F.R. § 404.1567(a). Plaintiff's previous job as an LPN is deemed to involve "sedentary work." *Dictionary of Occupational Titles*, DICOT 045.107-014 (4th ed. 1991).

Dr. Sheely's opinion would limit Plaintiff to sedentary work.[9] The VE testified that no jobs existed for Plaintiff based on the limitations imposed by Dr. Sheely.

---

[9]Dr. Koch also opined that Plaintiff should not do any repetitive lifting and only occasionally lift between 5 to 10 pounds which would limit Plaintiff to sedentary work. (T. 368).

<u>Evidence Submitted to Appeals Council</u>

Plaintiff argues that the Commissioner failed to give any reasons for discounting the additional evidence she submitted to the Appeals Council. The ALJ issued her decision on June 28, 2005. (T. 24). Plaintiff submitted additional evidence to the Appeals Council on July 28, 2005. (T. 364-70).

The Appeals Council admitted this additional information into evidence. (T. 10). However, the Appeals Council did not even discuss this additional evidence in its decision to deny Plaintiff's request for review.

However, "the Appeals Council *must* consider evidence submitted with a request for review if it is '(a) new, (b) material, and (c) relates to the period on or before the date of the ALJ's decision.'" *Bergmann*, 207 F.3d at 1068; *See also* 20 C.F.R. § 404.970(b). The Court's review of whether the evidence submitted meets these factors is de novo. *Bergmann*, 207 F.3d at 1068.

Here, Plaintiff submitted the following additional evidence: (1) a treatment note from Dr. Koch, dated May 2, 2005; (2) a treatment note from Dr. Owen R. O'Neill, dated June 20, 2005; and (3) a letter from Dr. Koch, dated July 14, 2005. (T. 364).

### *Dr. Koch's Treatment Note From May 2, 2005*

Dr. Koch indicated in her treatment note that she had not seen Plaintiff for some time. (T. 369). Dr. Koch stated that Plaintiff continues to have problems with her right hand and the surgery she performed on Plaintiff's right hand "did not provide long-lasting benefit" for her. (*Id.*)

Dr. Koch noted that Plaintiff still had residual pain in her knee six months after her knee surgery. (*Id.*). Dr. Koch also had a long discussion with Plaintiff regarding her options "for treatment [on her hand] including a course of cortisone injections for pain relief as needed versus [surgery]."

22

(*Id.*).   Dr. Koch indicated that it was very possible that surgery could cause a loss in Plaintiff's range of

motion in her fingers.  (*Id.*).

### Dr. O'Neill's Treatment Note From June 20, 2005

Dr. O'Neill noted that Plaintiff's knee was doing well, but she had diffuse pain throughout the

leg.  Dr. O'Neill indicated that Plaintiff  had "excellent knee motion," but recommended further

evaluation and treatment for her soft tissue pain.  (T. 370).

### Dr. Koch's Letter

On July 1, 2005, Plaintiff's attorney sent a letter to Dr. Koch seeking her opinion as to whether

Plaintiff could perform the jobs suggested by the vocational expert at the administrative hearing.  (T.

365).  On July 14, 2005, Dr. Koch responded and indicated that Plaintiff could not perform any of the

jobs identified by the vocational expert.  (T. 368).  The letter stated in pertinent part that:

> In regard to the physical demands placed on [Plaintiff's] hands for the jobs of merchant
> patroller, cashier, and office helper, the fingering and handling is frequently or 1/3 to 2/3 of an 8
> hour work day is beyond her ability to sustain such hand use 5 days a week. [Plaintiff] should
> do no repetitive lifting and only occasionally lift between 5 to 10 pounds and these restrictions
> would have been reasonable since her last hand surgery on June 25, 2002. (*Id.*)

The Court finds that this additional information was new because it provided an updated

account of  the doctors' assessment of Plaintiff's right hand and knee.  The treatment notes were

material because they highlighted Plaintiff's continued problems with her right hand and knee.  Dr.

Koch's letter was also material because it provided an updated account of Plaintiff's residual functional

capacity and directly contradicted the vocational expert's testimony regarding the three jobs Plaintiff

could perform.  Finally, the additional information also related to the period on or before the date of the

ALJ's decision.  Thus, the ALJ's conclusion regarding Plaintiff's residual functional capacity was not supported by substantial evidence.

A decision from the Eighth Circuit on new evidence is instructive here.  *Jenkins v. Apfel*, 196 F.3d 922, 924 (8th Cir. 1999).  In that case, the claimant submitted medical reports from a treating physician which indicated that the claimant had less residual functional capacity than the ALJ had determined.  *Jenkins*, 196 F.3d at 924.  The Eighth Circuit reversed the ALJ's finding that the claimant was not disabled.  The appellate court reasoned that the new evidence contradicted the ALJ's reason for relying on the non-treating doctor's assessment.  *Id.* at 927.

Similarly, the ALJ in this case relied on the opinion of Dr. Chisholm, a non-treating physician and discounted the opinions of Plaintiff's treating physicians.

The Court must evaluate this new evidence and determine how the ALJ would have weighed such evidence if it had existed at the original hearing.  The Court finds that if the new evidence was before the ALJ, then the ALJ would have adopted the treating physicians' assessment of Plaintiff's residual functional capacity rather than the non-treating physician's assessment.

A treating physician's opinion is due controlling weight if that opinion is well-supported by medical evidence and is not inconsistent with the other substantial evidence in the record.  *Hogan*, 239 F.3d at 961.  On the other hand, "[t]he opinion of a consulting physician who examines a claimant once or not at all does not generally constitute substantial evidence."  *Kelley*, 133 F.3d at 589.

Thus, the ALJ's reliance on the non-treating physician's opinion is not substantial evidence in light of the conflicting assessment provided in the newly submitted evidence.  Indeed, the newly

24

submitted evidence undermines the ALJ's reasons for discounting Plaintiff's credibility and the opinions of Plaintiff's treating physicians.

Therefore, the ALJ's conclusion on Plaintiff's residual functional capacity was not supported by substantial evidence.  Consequently, the vocational expert's testimony was not substantial evidence that Plaintiff could perform other substantial gainful activity.

## VIII.   CONCLUSION AND RECOMMENDATION

"If the record contains substantial evidence supporting a finding of disability, [this Court] may reverse and remand for an order granting benefits to the claimant." *Cunningham v. Apfel*, 222 F.3d 496, 503 (8th Cir. 2000).

Here, the ALJ improperly discounted and ignored the opinions of Plaintiff's treating physicians. The ALJ also erred in her assessment of Plaintiff's credibility.  The Appeals Council failed to even discuss the newly submitted evidence in its decision to deny Plaintiff's request for review.  The new evidence also contradicted the ALJ's reasons for discounting Plaintiff's credibility and the opinions of Plaintiff's treating physicians.  Finally, the record shows that Plaintiff was fifty-three years old at the time of the administrative hearing.  This is considered "approaching advanced age" under the regulations. *See* 20 C.F.R. Pt. 404, Subpt. P, App. 2 § 201.00(g).  Plaintiff previously worked as a licensed practical nurse which is considered semi-skilled and would not involve any transferable skills.  (T. 128; T. 396-97).  Plaintiff's educational development is also limited.  The substantial evidence in the record shows that Plaintiff is limited to sedentary work.  Thus, under the medical-vocational guidelines, Plaintiff is considered disabled.  20 C.F.R. Pt. 404, Subpt. P, App. 2, Table No. 1, Rule 202.14.

Accordingly, the Court finds that the record establishes disability and this matter should be remanded for the calculation of payment of benefits.  Accordingly, the Court **recommends** that Plaintiff's Motion for Summary Judgment [Docket No. 8] **be granted** and the Commissioner's Motion for Summary Judgment [Docket No. 12] **be denied.**


Dated: 12/22/06

s/ Arthur J. Boylan
Arthur J. Boylan
United States Magistrate Judge

26

**NOTICE**

Pursuant to Local Rule 72.2 (b), any party may object to this Report and Recommendation by filing with the Clerk of Court, and by serving upon all parties, written objections which specifically identify the portions of the Report to which objections are made and the bases for each objection.  This Report and Recommendation does not constitute an order or judgment from the District Court and it is therefore not directly appealable to the Circuit Court of Appeals.  Written objections must be filed with the Court before **January 10, 2007.**